Mr. Underwood, are you with us? I am. And Mr. Goldsmith? I am here. Very good. 20-1831 from the Southern District of Iowa, Daniel Gardner v. Wal-Mart Stores et al. Mr. Underwood, you may proceed. Thank you, Your Honor, and may it please the court. This court should reverse and remand this case for trial for three principal reasons. First, a reasonable juror could find that Dan Gardner complied with Wal-Mart's HME policy, that Wal-Mart misapplied that policy as a pretext to discharge him, and that Wal-Mart singled out Dan Gardner for discipline alone. Second, a jury could find that Jennifer Gray was involved in the decision to fire Gardner, and her repeated derision of, quote, old guys is precisely the type of evidence that this court has repeatedly held supports an inference of discrimination. Third, a jury could infer age discrimination from Fleet Safety Director Michael Noble's two-year pattern of firing older workers. Viewing all the evidence favorably to Dan Gardner, a reasonable juror could find that age, quote, played a part in his discharge, which is all that is required in this Iowa Civil Rights Act case. Taking those three principal points in order, Wal-Mart claims in this case that Gardner violated its HME policy when he failed to suspend a driver on his 90th day without the correct license endorsement. The problem with that argument, Your Honors, is that Wal-Mart has never, at any point in this litigation, identified where the HME policy assigned that responsibility to Dan Gardner as a safety manager. And that is because the policy doesn't assign that responsibility solely to Dan Gardner as a safety manager. Instead, as quoted at page 8 of our reply brief, in full as relevant here, Gardner's responsibility under the policy was to identify drivers without the correct endorsement and notify operations managers. And it's undisputed in this case that Dan Gardner repeatedly did that. He testified in his deposition that he did that, and Wal-Mart has produced no evidence at any point contradicting that claim. Well, Mr. Underwood, as I understand it, in paragraph 26 of his complaint, he says he realized he made a mistake. And then in his deposition on page 165, he said he had violated the HME policy. Yes, Your Honor. I think at first, with respect to the complaint, Your Honor, I think that that allegation has to be taken in the broader context of what took place here. I don't think that there's any dispute that there was a failure at multiple levels to ensure that the driver was suspended as required. But I don't understand the allegation that Dan Gardner assumes that he made a mistake to be consistent with the notion that he violated the HME policy by failing to suspend the driver on the 90th day without an HME license or an HME endorsement, Your Honor. Dan Gardner testified in his deposition as well that he lacked the authority to suspend drivers without that policy unless he was approved from somebody above. Dan Gardner didn't know that the driver had reached the 90 days without the policy because the operations manager failed to calendar the event after Dan Gardner told him that the driver lacked the policy. And the policy places that responsibility both on the operations managers and the general transportation manager, Michael Billups, to ensure that the policy was fulfilled. And I think Billups' testimony in his deposition, which we cited in our reply brief, at least, is consistent with the idea that there were multiple failures along the way. But Dan Gardner was the only one that was disciplined, much less fired in this case. They're all part of one, quote, operational team, as Michael Billups referred to it as, and he was the only one that was disciplined. Is he different off the bat, though, because he has three prior offenses and he's in their disciplinary policy? Does that just make him completely different than anybody else involved in this case? Well, Your Honor, I think we should be clear here. Mr. Gardner was on a third written warning, but that's not the same thing as having three prior disciplinary offenses. Now, Wal-Mart throughout this case has shifted its reasons for why it discharged Gardner. It first said it was because he was on this third written warning purportedly for a HIPAA violation. But again, Wal-Mart has never produced that that the documentation of that investigation, even though Jennifer Gray testified it existed. Now, Wal-Mart shifted it, pivoted and said it in fact disciplined Gardner in that third written warning for purported judgment errors. But the report of the supposed HIPAA violation has never surfaced. And Jennifer Gray said she saw it, but Wal-Mart has never produced it in this case. So we're unable to discredit it. We're unable to see what Wal-Mart's investigation or purported investigation disclosed. So Gardner got a third written warning, but it's not the same thing as saying that he had a trio of prior offenses. Now, it is clear that Gardner had that that discipline sort of out there. But the fact doesn't change that Wal-Mart imposed no discipline for the HME violation on anybody else in the operational team. And so I don't think it's it's I think Gardner's admissions, as Wal-Mart has phrased them, aren't admissions of violating the HME policy. He, in fact, complied with the HME policy, as he also testified. We think that's evidence of pretext. Next, it's undisputed in this case that Jennifer Gray, who is Gardner's former supervisor, repeatedly derided, quote, old guys as sticking around too long and needing to get caught up with technology. Because it can't dispute that fact, your honors, Wal-Mart tries to persuade the court that Gray wasn't involved in Gardner's termination. Now, Wal-Mart is entitled to make that argument to a jury. But at this stage, the court must view the facts favorably to Dan Gardner. And the evidence here is clear that Gray was involved in the decision to fire Gardner. Gray's own boss, Michael Noble, undisputedly involved in the decision, testified in his deposition that Gray was involved in the decision. We block quoted that testimony in our brief, but Wal-Mart didn't even address the point in its own brief. It merely continues to claim, contrary to Michael Noble's clear testimony, that Gray wasn't involved in firing Gardner. To the extent that there's any conflict in their testimony, this court must resolve that conflict in favor of Dan Gardner. Under that well-settled standard, a jury could conclude that Jennifer Gray was involved in the decision to terminate Gardner, that she was motivated by age-based animus and that her bias played a part in the decision. Finally, Your Honors, a jury could infer age discrimination from Michael Noble's two-year pattern of firing older workers in the same relevant group as Daniel Gardner. It is undisputed that nine of 10 safety managers who held the same role as Dan Gardner that Michael Noble fired during his time were age 48 or older. It is similarly undisputed that Noble was involved in every such decision. As this court has repeatedly held, that is evidence from which a jury could infer age discrimination. And unless Your Honors have any questions, I will reserve my remaining time for rebuttal. All right, Mr. Underwood, thank you. Mr. Goldsmith, the court will hear from you. Thank you, Your Honor. Good afternoon. May it please the court. I'm Mark Goldsmith. I represent the Wal-Mart's appellees. And we ask that you affirm the district court's decision. Before I get into pretext and some of the evidentiary arguments raised in the opening statement, I'd like first to tackle a little bit the prima facie second element that Mr. Gardner had to establish that he was performing to Wal-Mart's legitimate expectations. And that comes from the Iowa cases, Seavers, Weingarten and Johnson. And the evidence is he was not. In the months leading up to his termination. But hasn't hasn't the Iowa Supreme Court more frequently spoken of that element as showing a mere qualification being enough as opposed to satisfactory performance? I don't think so, Your Honor. And frankly, I'm not aware of that authority. Instead, the there is a split in the Eighth Circuit and some cases do say minimum qualifications. Some do talk about meeting expectations, but the concerns raised in the minimum qualification cases like Lake and so forth and McGinnis case. Those concerns revolve around the collapsing of the McDonnell Douglas framework, specific pretext right into the prima facie case, short circuiting it. And that would be true. I'm with Judge Grunder and wanting you to address there on page six of the reply brief. Page six of the reply brief has a long list and it's a quotation. I didn't check it, but boy, it's a bare naked quotation with, oh, I don't know, three or four cases there and two from the Iowa Supreme Court about they're saying qualified. You're right about the Eighth Circuit cases. I give you that. But what about those cases there that look like it is just qualified? It's not this like we do in federal court, you know, otherwise qualified and performing up to expectations, et cetera, et cetera. Address the Iowa authority. Sure. They all predate Sievers. Iowa Supreme Court and Sievers by it looks up to about 15 years. Sievers came down in 98. Iowa State Fairgrounds is in 82. Whitberry in 81. Wing in 88. And the Wine Garden. Does Sievers mention those cases? Right. And Sievers says. The element, the second element of the prima facie case is you have to meet. Yeah, but my question is more simple minded than that. Does the Sievers opinion mentioned Iowa State Fairgrounds, Woodbury and Iowa Civil Rights Commission mentioned those cases or not? I don't believe that it does, Your Honor. OK, thank you. Proceed. OK. But going back to the Eighth Circuit and going back to the cases, the concern about collapsing. Pretext into prima facie does not exist when we do not rely upon the terminating offense as evidence. That the plaintiff was not performing his job to the satisfaction of the employer. And that's not the case here. We don't say Mr. Gardner wasn't performing his duties. And to our satisfaction, just look at the HME policy violation. That's not our argument. You can tell I'm fascinated by this. Usually when state Supreme Courts talk about something and there's other cases, they halfway mention them or reference them or something or something. And so is there any way to reconcile those cases that are on the reply brief, you know, the ones I'm referring to with Sievers? I think only to say that the Sievers is pretty plain in what they say the elements are. But to be silently overruled is what you're saying. Silently overruled the other cases. Not patently overruled in Sievers. I'll concede that, Your Honor. Yeah, but silently overruled. Now, there's, you know, there are Iowa authorities and what's called Iowa practice or something like that. Is that the reigning wisdom in Iowa that they silently overruled that wasn't cited to us? I don't think that is the case, Your Honor. And frankly, the case law recently shows that nobody's really sure about this element. And that plays into the McDonnell Douglas prima facie case is a bit fluid. So you say it's the same in Iowa as it is in federal. That's what you're trying to say in the end. Well, I think that is more clear based on the Sievers case, but yes. OK. Now, I would like to address some of the issues raised in counsel's argument, namely that the record does not reflect the arguments raised. Dan Garger and Your Honor hit on it exactly right in the complaint. He judicially admits he violated the policy in deposition. He admitted he violated the policy and his violation was the failure to alert operations that driver number two did not have his HME after 90 days. And counsel makes the point that and I think in the record, it's six times Mr. Gardner informed operations that driver number two hadn't gotten his HME. But the very next quotation in that deposition transcript confirms. Did you inform any of the ops managers when the 90th day passed after driver two's date of hire and he still hadn't obtained an HME answer? No. And that's on page 361 of the appendix. The violation was he didn't tell operations. Hey, this guy doesn't have his HME after 90 days. He needs to be pulled. That's the violation. There's no argument. And in fact, Mr. Gardner knew that was his failure. He simply thought that he had until 120 days. It wasn't a matter of what his responsibility was. It was when he had to execute that responsibility. Secondly. Hey, counsel, talking about that reason, before the Iowa Civil Rights Commission and in the district court, didn't Walmart give a lot of other reasons, a lot of other violations, list a lot of other violations or deficiencies? I'll take them one at a time with respect to the argument. I guess I guess that's a yes. Yes and no. We provided extra or multiple reasons as to why he wasn't meeting his prima facie burden. I'm just wondering, you know, one of the things that that we look for sometimes are shifting reasons where the where the employer can't make up his mind really what the what the violation was or what the reason for termination was. And is this one of those situations where you where we're looking at shifting, shifting reasons where Walmart's really not too sure about its given first given reason? Absolutely not, Your Honor. Up and down from day one, he was terminated because he violated the HME policy while on an active third written. And Mr. Noble testified that, yes, he did consider. For color and context, the prior failures in the months preceding, but never was he or did anybody ever say Mr. Gardner was terminated because he missed his midyear evaluation. If that were to be the case, Mr. Gardner would have been terminated in August. And the same goes for speaking about business matters with driver spouses. The same goes for miscommunicating the open door policy to his drivers. And the same goes for the insubordinate email and not knowing where the training materials were in his December email to Miss Gray. Now, the attempt to paint Miss Gray as someone out to get Mr. Gardner overlooks the fact that if she wanted to fire Mr. Gardner, she could have jumped on any of those four opportunities to do so. And so you're interrupting me, interrupt you for a footnote. So you're admitting Miss Gray was involved in the decision to fire him, right? Absolutely not. Well, let me know what you just said. Well, her involvement was she sent three emails. She was not part of the discussion. She didn't know why she was being asked for the emails. She didn't know about his termination until after the fact. So her involvement, Noble does say she was involved in the discussion. He says that in deposition, but the follow up has to be what was her involvement? And the cases is the Roberts case out of the Eighth Circuit says she has to be a key decision maker. She has to be closely involved. She has to be part of the or the comments have to be part of the decisional process. None of those are true in this case. So with my three seconds less, I'll just ask the court to affirm the district court's ruling. Thank you, Mr. Goldsmith. Mr. Underwood, your rebuttal. I'm glad I unmuted myself. Thank you, Your Honor. Quickly, too, I believe it was Judge Benton's question about how do we reconcile Sievers with the cases cited on page six of our reply brief. I think the answer to that question is you can't reconcile Sievers with those cases if Sievers is about the Iowa Civil Rights Act. And the fact of the matter is, is that Sievers isn't about the Iowa Civil Rights Act. That's for two reasons. First, Sievers applied only 80 E.A. standards in that case because there had been a stipulation that the ICRA claim would be bound by the federal discrimination claim. So the court had no reason to apply the ICRA. The other thing that Sievers does is it cites a case called Vaughn versus Must, Inc. And Vaughn is 542 NW 2nd 533. Vaughn was only a federal case. I don't think that Sievers stands for anything more than the proposition that in 1998, the standard under federal law was what Sievers said it was. But it doesn't speak to the ICRA. To the question about what the HME policy requires. And this will get back into Judge Grunder's question, too, about the admission or purported admission by Dan Gardner in his deposition, which I think I didn't directly answer earlier. We quoted the HME policy on page 8 of our reply brief. And what Walmart has repeatedly said throughout is that Gardner has admitted to violating the policy by not informing the operations managers when the 90th day had passed. The problem is that the HME policy doesn't require that. The policy's requirements are, under this court's case, a question of fact. And the only references to 90 days in that block quote on page 8 of our reply brief refer to other managers. Operations managers have obligations relating to the 90th day. And the general transportation manager has obligations relating to the 90th day. Any reasonable juror could infer from that policy that Dan Gardner's only responsibility was to identify the drivers and notify the operations managers. And he did that, and it's undisputed. The 90th day obligation belonged to the operations manager. And the operations manager dropped the ball here, just like the general transportation manager, Michael Billups. None of them were disciplined, much less discharged for that violation. And I just think that Walmart is asking the court at this stage to weigh the evidence, and these are questions that I think a jury should decide. And I have nothing to add. Very well. The court appreciates your appearance today and your briefing. The case will be submitted and decided in due course. Thank you, counsel.